I want to welcome all of you to the United States Court of Appeals for the 5th Circuit, and we have a very special welcome to the seniors from Ben Franklin High School. All right, and I think they were accompanied by their teacher, Mr. Dreyfuss, accompanied by, but not sitting with, no room left. All right, but Mr. Dreyfuss is here. So we're looking forward to our arguments this morning, and the first case on today's docket is cause number 24-10386, State of Texas v. Bondi. Is the appellant ready to proceed? Good morning, and may it please the court, Courtney Dixon for the federal government. The district court's decision in this case is, as far as we are aware, the first time a court has ever held invalid an act of Congress on the basis that Congress allegedly lacked a quorum at the time of its vote. That holding is a remarkable intrusion into the internal proceedings of a coordinate branch of government, and it rests on a misunderstanding of the enrolled bill rule and of the quorum clause. Nothing in the Constitution's text imposes a physical presence requirement on members of the House. And the district court's decision to read such a requirement into the Constitution unduly constrains the House's constitutionally conferred rulemaking power and calls into doubt centuries of legislative practice. You're not disputing state standing here? We haven't raised standing in this case, no, your honor. And there was a bench trial, but no evidence was taken? There was a bench trial, your honor, yes. If the $3 trillion was not constitutionally passed, how did the district court have injunctive authority to release Texas as to pregnant workers, but not as to other monies appropriated? The district court found that Texas, after a bench trial, had established its standing only to challenge the pregnancy workers' fairness. Right, but what's the injunctive authority to essentially sever and piecemeal out an omnibus billing bill? Let's say if there were an unconstitutional passing of this legislation, doesn't it all fall? I mean, the district court, pursuant to traditional equitable principles, crafted a remedy. We think the district court, of course, shouldn't have adjudicated this case at all. It should have applied the enrolled bill rule at the outset. Okay. But the district court crafted an equitable remedy pursuant to equitable principles. Of course, the district court's decision does call into question a $3 trillion appropriations bill. That's why the enrolled bill rule, the principles underlying that, apply with full force in this case. Keep your voice up, please. Yes, your honor, certainly. To prevail at that threshold, you've got to convince us that the footnote four in Munez is dicta, correct? Not that it's dicta, your honor. Just that it — I mean, Texas understands that footnote to essentially say that the enrolled bill rule does not apply to constitutional claims. Marshall Field itself was, of course, a claim under the bicameralism clause, so that can't be the appropriate understanding. Yes, but it was a claim about what actually passed, what the text of the bill was, not whether Congress followed the procedures enumerated by the Constitution for doing so. The Supreme Court in Marshall Field said that, you know, this case involves the provisions of the Constitution relating to the enactment of laws. And in Munez-Flores, the Supreme Court, in that footnote, your honor, described Marshall Field as concerning the nature of the evidence the court will consider when the question is whether a bill actually passed Congress. Texas here squarely alleges that the Appropriations Act never became a law, never passed Congress. Not that it didn't pass Congress, but that the House was not properly constituted to do business that day. The House did not have a majority quorum such that its power to conduct business did not arise. That is Texas's claim. Texas squarely alleges that, you know, the President's signature on this bill is a nullity. This did not pass the House. The principles underlying the enrolled bill rule apply to that claim with full force. And with respect to, you know, the district court in this case itself acknowledged that the enrolled bill rule can have application to at least some quorum clause claims. The district court really rested its holding on this purported distinction between fact-intensive claims and legal claims. Well, it just basically made an authentication rule that you can't impeach something that's an enrolled bill. That means the contents are what Congress, you can't use the journal to impeach it. Seems like a coherent rule. And tell me why, if that isn't the rule, how could cases like Powell v. McCormick have come down? Well, I mean, this Powell first was a, you know, a political question case. And there the Supreme Court, you know, said that, you know, it could adjudicate the addition of, you know, qualifications. But within the House's power to adjudicate, you know, qualifications within what it was enumerated, that was entrusted to the House. I don't think that really speaks to the question at issue here. And with respect to the enrolled bill rule, I think the fundamental point is that when you have the signatures of the presiding officers of each House of Congress say, this is a bill that has passed Congress. It goes to the president. The president signs it. It's deposited in the public archives. That is conclusive as to whether it's— Well, you're articulating Justice Scalia's concurrence in Muniz-Flores, but that didn't carry the day. Well, Justice Scalia in Muniz-Flores was advancing the argument that the designation on the enrolled bill of H.J. Rez should be conclusive as to its origination. The Supreme Court wasn't persuaded by that. I think that— He was espousing a broader view of the enrolled bill doctrine under Marshall Field, but the court didn't agree with him. With this question with respect to the designation H.J. Rez on the enrolled bill, I think that's very different than saying you have signatures from the presiding officers of each House of Congress. You have the signature of the president, and the court is going to adjudicate, did this bill become a law? That's squarely within the rule of Marshall Field. Marshall Field itself cited a state court decision applying the enrolled bill rule to a quorum clause claim, the decision from the Supreme Court of Indiana in Evans v. Brown. That decision relied on remarkably similar reasoning to what Marshall Field later relied on. Courts of appeals have— But we know textually, the framers said, we know textually that Congress can't do its business without a majority. Would your enrolled bill doctrine rule mean courts couldn't interfere if Congress said, well, the Speaker is the majority, unilaterally gets to speak for the others? There'd be no judicial intervention to correct that? I mean, under the enrolled bill rule, to the extent that the Speaker of the House has signed a bill— Yes. —this past, you know, the House, the Speaker, you know, the presiding officer of the Senate signs it, and it goes to the president, and it signs it, you know, Marshall Field says that's conclusive that the bill passed the House. But the government's position is, if the House did say the Speaker is the quorum, and then it goes through, and it's signed by the president, courts can interfere to enforce the textual majority requirement. Well, I'll see—Marshall Field considered this question, Your Honor, that Marshall Field explicitly discussed the argument that— Right. But then the argument is, and it seems quite compelling to me, that then in Munoz-Flores, the majority of the court did realize that that interpretation isn't workable. So let me ask it this way. If we disagree with you as to the enrolled bill doctrine, are we creating a split with any other circuit? Courts of appeals have applied the enrolled bill rule to foreclosed consideration of quorum clause— Okay. So which one would you say would be the sharpest one that we couldn't reconcile? Which one explains your position? Clear us. I mean, I think the Second Circuit's decision in the Farmer case is probably the most fulsome explanation of this. I mean, the courts in those cases essentially say, you know, there is a dispute here as to whether this bill passed by a quorum. The enrolled bill applies, and we're not going to consider that question further. We also cite decisions from, I believe, the Seventh and the Tenth Circuits. Did D.C. Circuit and Public Citizen say that, too, or didn't quite get there? I mean, in Public Citizen, the question was whether, you know, it was a dispute similar to, like, the dispute in Marshall Field. The Supreme Court—or, sorry, the D.C. Circuit goes through, you know, the Munoz-Flores footnote. It explains that, of course, it wasn't overruling the rule of Marshall Field, that in Marshall Field, you know, the question was whether a bill had passed Congress. In Munoz-Flores, the bill had unquestionably passed Congress, so it wasn't considering the same question. I think all of that is, you know, supports the government's position in this case and is persuasive evidence. But the Public Citizen case didn't directly involve a quorum clause claim, if that's Your Honor's question. Does the majority requirement for the quorum clause include proxies? I guess I would ask what Your Honor means by proxy. What I mean is if 218 members of the House said to the Speaker, here's my proxy, we'll be in our districts, you can vote us how you want to, does that include—does that meet the quorum clause majority requirement? I mean, we're discussing the merits of the quorum clause. We are discussing the merits, yes. So it sounds like, in Your Honor's hypothetical, that that's similar to the proxy practice that Texas discusses at length in its brief, closer to what the Founders would have been familiar with. I guess that's what I'm grappling with. Does the presence requirement in the quorum clause include proxies? So the language of the Constitution, of course, says nothing about that one way or the other. Well, what do you do with the clause in the quorum clause that talks about compelling absent members to attend? Right, so that language doesn't refer to the physical presence of members either. And with this question— How does it not? It refers to their physical absence, does it not? It doesn't refer to the word physical at all, Your Honor, and we cite definitions from both founding era and modern sources that— You say they could be inattentive in the back or what have you. I mean, not paying attention, right? It's attending to the House's proceedings through the rules the House has adopted. Then how do you square that with balun? I mean, in other words, balun was about people present but not voting. In balun, the House had changed its quorum rules from how it had determined a quorum for the first 100 years before that decision. Traditionally, my understanding is that since the founding, the criteria in the House used for whether a member was participating was whether they participated in a vote. The House changed its rules in 1890 and used the criterion of physical presence. The Supreme Court, in balun— The common criterion in all of that is physical presence. There's never been an instance where they could phone it in or mail it in or proxy it in, is there? Well, I mean, I think as a practical matter at the founding, yes, individuals were physically present. That doesn't answer the question of— Nobody in the founding ever sent a letter in saying, I can't get there from Pennsylvania this time. Please accept my proxy from Representative so-and-so. He can vote for me. Well, the House hadn't adopted a rule at that time. There's also— But it's never happened. The House has, of course, throughout its history changed its quorum rules. But it's never happened, correct? I mean, the kind of remote voting that the House adopted here, I believe, for the—you know, it's the first time the House has authorized remote voting. Of course, during the pandemic, you know, every— But they also—they didn't just authorize remote voting. They authorized remote presence. I mean, it was— For the purposes of creating a quorum to do business. I mean, it's true, Your Honor, that in terms of remote voting, the House, you know, the House's rule authorized that during the pandemic. Why don't you step back, and what's your position? Are you saying there's just nothing in the text that has to do with presence at all? It's just a coding feature? Or are you saying there was presence here, and the framers didn't distinguish between physical and virtual? Or are you saying what they came up with, the rule here, is one that actually facilitates what we knew they wanted, which is to maximize participation? Is it portions of all three? It's certainly portions of the latter two, Your Honor. I mean, yes, it does—it refers to presence. But again, we're talking—the quorum clause itself specifies the number of members that must participate for the House's power to conduct business to arise. Neither the district court nor Texas take dispute with the fact that the plain language of the quorum clause does not refer to physical presence. It does not specify how members may participate. The Constitution specifically gives to each House the power to determine the rules of their proceeding. Balance supports the fact that the House has wide latitude to determine the rules of its proceedings and how members may participate. Does this case, factually, or in the district court's ruling, or in Texas's arguments, have anything to do with whether there was delegation of voting authority as to the bill? Or is it just about how we count for a majority? Just with respect to how we count for a majority, Your Honor, and to Judge Wilson's question, again, I was trying to clarify that, you know, with respect to Texas discusses at length proxy voting, the district court discussed proxy voting as well. The concern that I think Texas is raising is this kind of discretionary delegation of a vote, delegating someone the ability to cast a vote in the way of his or her choosing. But you're delegating presence. It's not just the vote. The vote was what constituted the quorum as well, right? In other words, I think there's a distinction, maybe, between proxy voting and proxy presence. And I'm just wondering if 218 members can say, Madam Speaker, you've got my proxy to be present, so anytime you want to convene the House, you've got a quorum. Can that work? I mean, I guess in the first instance, that would be a question for the House, whether with respect to whether it's going to adopt a rule. A question for the House, irrespective of what the Constitution requires? In the quorum clause, at least, with respect to the quorum clause and the quorum requirement, it specifies that a majority of each House shall constitute a quorum to do business. There's no dispute in this case. Well, if they're not there, if they're absent, they can be compelled to come. Yes, Your Honor. And I guess, excuse me, I've lost my train of thought for a second there, Judge Higginson. But my point here is that there's no dispute that a majority of members participated in the vote, that every member cast their own vote. The legislative record shows that at least three members who participated in the vote on the bill changed their vote in real time during the course of the proceedings. These members were attending to legislative business. They were doing so pursuant to the rules the House had adopted. And, you know, as we note in our brief, there are a range of contexts in which it's well accepted that a quorum of members is the members participating, that it does not require all members to be physically present in a single location. Unless there are no further questions, I'll reserve the remainder of my time for rebuttal. Thank you, counsel. Mr. Beach. May it please the Court, Jake Beach on behalf of the state of Texas. Your Honors, there's two points I'd like to make. First, as to the enrolled bill doctrine, the federal government's argument cannot be squared with the Supreme Court's holding in Munoz-Flores that Marshall Field concerned the nature of the evidence the Court would consider in determining whether a bill had actually passed Congress and where, as here, a constitutional provision is... And you're seeing that holding in footnote four most clearly? Yes. And they reaffirmed that holding. Justice Souter, in his opinion in U.S. National Bank of Oregon, footnote seven of the majority opinion, says that where there's not a dispute between the enrolled bill and the statute at large, the enrolled bill doctrine is irrelevant. He uses the word irrelevant. So that shows you how narrow of a rule it is. He wrote separately, but your rule would be inconsistent with Justice Scalia's opinion, correct? Yes. Yes, Your Honor. And to rule your way, would we be... Would we have to split with other circuits, particularly, say, the second? No, Your Honor. The Farmer case is distinguishable there. They were raising a factual challenge where Congress had taken a roll call, established a quorum in the morning, and because they did not take a second roll call in the afternoon, that was the challenge that petitioners had brought in Farmer saying that, well, there's no proof of a quorum. That falls within the presumption of a quorum that the court has recognized permissible in Noel Canning. Marshall Field does have the attractiveness, sort of the separation of powers attractiveness, right? Which is just courts take Congress at its word. Once they've enrolled a bill, it passed constitutional muster. It's an easy bright line rule. Well, yes, Your Honor. And if you're going to use the House journal to impeach what was actually passed, that's not permissible. It's a non-judiciable question. And second, our argument. So the enroll bill doctrine wouldn't stop any litigant from suing and trying to block any spending bill because they just dispute how the majority was counted? This is a limiting principle question. Yes. Yes, Your Honor. I mean, I think that the enroll bill doctrine is a narrow prohibition, and that is what this... As to the contents and language of the bill. But therefore, there could just be a huge proliferation of people who claim to be injured, who would sue and say, you didn't count the right majority. Correct, and those would be barred because that would be raising a fact question that would not be appropriate for judicial inquiry. Whereas here, there is no fact question. The record is undisputed that there was a majority absent. Okay, so some set of those suits would be barred when it's sort of judicially noticeable that they're wrong, but here, Texas can get past that? Because it is undisputed as a matter of fact that there was not a physically present majority. And Judge Hendricks explains that is the only reason he can reach the question here, that he's not impeaching on a legislative prerogative to determine what texts receive judicial legislative sanction. And going to the merits here, the government's argument, the federal government's argument is that attendance means pay attention. And the framers gave Congress the power to make people pay attention. Well, the other argument is there's no physical presence in the quorum clause. And I mean, taking the point that a majority has to mean something, it's in the text of the Constitution. There is no physical presence there. And what the district court really said was the quorum meant physically present majority. But that's not necessarily, that doesn't necessarily, it's not the only way you can comply with that clause, is it? Oh, no, Your Honor, we believe it is. Could Congress meet by Zoom? If a physically present majority is there, the remainder can participate how Congress prescribes. But how do you read in the word? You say if a physically present majority is there, what do you mean when you say that? Because he's asking about Zoom. If a physically present majority is in the Capitol, that is what, when you look at Noel Canning, that is the limiting principle articulated. But the text doesn't say that. It doesn't say physical presence and it doesn't say at the Capitol. Your Honor, we agree with Judge Hendricks that the word quorum in a vacuum does not indicate physical or virtual. Well, even compelling absent members. I mean, we just had in-bank in September. Oh, wait, when was that? January by Zoom because of the snow in New Orleans. We couldn't travel here. I mean, is that illegitimate that we were all appearing from chambers or from wherever we were? We had court. No, Your Honor, because this court has rules that it can make and works under delegated authority. Why wouldn't Congress also be present if they were in a live Zoom forum call, whatever you call it, participating in lawmaking and debating bills and voting the way they would do in person? Because when we look at what the original public meeting of the quorum clause is, you look at the text history and tradition, text compelling the attendance of absent members, the majority of the dictionary is the common usage of that word. But I mean, right, you would turn to the original meaning if the text doesn't answer, but the text that we're looking at is the majority of each house shall constitute a quorum to do business. It doesn't say in the Capitol or physical, doesn't even say present. So it could be virtual or physical, the text. So then you're saying to fill in the blanks in the text, we look at the purpose, but the government's answer seems sort of compelling when you look back at what Foran said they were saying, they were really worried about a little junta that could secede. So they gave a majority rule and then they added the compulsion clause all to maximize participation. And here the record shows we had 400 plus people participating. So I think the government's concept is to vindicate what they intended 200 years ago would be exactly this rule, just as the courts had to. Well, Your Honor, a few points there. So first, the first clause standing alone about constituting a majority, again, we do not dispute that that does not speak to physical presence. You have to look to the remainder of the quorum clause. The adjacent clause. The adjacent clause, yes, Your Honor, which says compelling the intents of absent members. That is strong indication based on- That just means they could compel somebody who's not there to come. But Your Honor, so the text alone is not the only inquiry. And then the other three indicia that the Supreme Court has told us to look to, including historical context, historical practice, and the tradition, the why and how, all of those support a physical presence requirement. As Judge Wilson pointed out, it's 235 years of consistent practice. And only in 2020 did they decide that physical presence wasn't necessary. So again, if we're going to talk about sort of limiting principles. So if there's a national emergency, snow, pandemic, you're saying that's when Congress can't work? The third Congress passed a bill saying that if there's a national emergency and they cannot convene in D.C., the president can pick another place for them to assemble. And the 9-11 legislation, they also look for ways to expedite the election of missing members of Congress so they can assemble. They never thought to say, well, let's have a phone vote. But I thought you said earlier it had to be at the Capitol. Okay. Your Honor, I'm answering, in the event of an emergency, the third Congress had said the president may pick a place other than the physical Capitol where they can convene. I imagine in that situation, as long as they convene there, they're acting under their appropriate legislation that would probably implicate the emergency powers, I'll be honest. Is there a difference between voting by proxy or remotely and being counted as a quorum remotely or by proxy? Well, yes, Your Honor, we think there is a difference. Again, if a majority was present, the remainder of Congress can vote by proxy. They just can't be counted towards the quorum because they're not physically present. They can vote by proxy if there's a majority. Yes, Your Honor. We believe that that falls within the constraints of the Constitution. So you're not, this case doesn't present to us delegation of authority, strict, open proxies? No, Your Honor. And I don't think that this case would bar proxy or Zoom participation for a minority of Congress so long as a physically present majority has assembled. Even though evidence wasn't taken, do we know, do you agree with opposing counsel that every one of these had an exact instruction and several changed their votes? Do you agree with those assertions of fact? Yes, Your Honor, we do agree with that. But we believe that appealing to the narrowness of the rule doesn't really resolve the question here because what they're asking this court to hold is that the quorum can be determined by Congress and it's beyond judicial scrutiny. And if that's true, to Judge Wilson's point, nothing stops a general proxy of 218 members. In fact, all of Congress could be run by two people, the two presiding officers. Back on the enrolled bill doctrine question, the threshold, the government's threshold. Sorry. Yes, Your Honor. I guess, I'm sorry, can you please clarify? I was mentally just shifting to the merits question. I thought it was merits, just in terms of whether we're talking about proxies versus not proxies. Your Honor, I'm attempting to answer your question about the merits here that under their proposed rule about what this court should articulate, it does open up general proxies and Congress can be run by two people. So while your question about the narrowness and us contesting how those proxies work, that does not resolve the question here because that's not the rule they articulate. Okay, you're saying this is confined to how do we count a majority? This case doesn't present whether or not proxies are permissible in terms of voting on the ultimate bill. Yes, and once you've established a physically present majority. That's what I wanted to clarify.  Okay. Apologies. So if we're just looking at whether, no, no, no, no. If we're just looking at whether or not there was a majority, we're back on sort of text structure. Your argument, I think, are mostly structural. You're saying infer from the compulsion clause or from other portions of the Constitution where presence is explicitly stated, right? The impeachment trial clause. Yes, Your Honor, exactly. So Article I, Section 3, if the word present means paying attention, if to convict on an impeachment, you need two-thirds of the senators present. Does that mean an impeached individual can then challenge his impeachment and say that, well, 10 people were paying attention and only five of them voted? That's what Walter Nixon tried to do, correct? Correct. He said that requires two-thirds to try me. Right. The Supreme Court said political question, right? Right. And the federal government's rule here invites a political question where one doesn't exist. As Judge Hendricks explained, there is an administrable rule, there's a bright line, physical presence or not, based on their own record keeping. And by changing the rule to presence is paying attention, you're asking the court to pay attention to make an inquiry into the subjective minds of Congress about whether they've actually paid attention or looked at their phone. And that's just not what the Constitution requires. Your rule would or wouldn't call into doubt unanimous consent votes? It would not. Just explain that. Because as Judge Hendricks explained very in-depth at record 1774 to 79, this rule begins, the unanimous consent begins with a physical quorum and then operates as a presumption until the presumption is defeated. That is not this case because they never had a physical majority to begin. It's easily distinguishable. And so by upholding the permanent injunction below, the unanimous consent practice would not be undermined. What do you do with Judge Higginson's question to counsel opposite? This is a $3 trillion appropriations bill. Texas has challenged a specific part of what was in that bill. But how does the rest of the bill survive? I mean, in other words, where do we cabin this if we go with your position? Yes, Your Honor. So record on appeal, ROA 1756, Judge Hendricks notes that this is a specific challenge to a particular house quorum rule as applied. I understand all that. But if the quorum is lacking for this specific part of the bill, how is it not lacking for everything else? And how does that get undone? So, Your Honor, I believe that that would be a different weighing of equities. Judge Hendricks gives weighing of the injunction factors. Judge Hendricks gives thorough analysis of this, saying that clawing back funding, that's a different case. That's a different question. Texas here has requested an injunction of a narrow piece of permanent legislation. And so in response to federal government's argument below that this would cause the 2020 to 2023 Congress to bottom out. That's just not true. And he also notes that on ROA 1743, he did not see any other bill that suffered from this flaw that the COVID voting at most was used by a couple dozen members in each situation. And the federal government, while they claim that this will cause a massive fallout, has yet to identify a single other piece of legislation that would fall if this... Instead of saying what Judge Hendricks did, what's your best authority that when Congress passes an omnibus bill for trillions, Texas can say, well, we'll take all the millions for veterans, but we're not going to adhere to the piece that relates to pregnant women. What's the authority that they can sever out and attack injunctively just the portion Texas doesn't like, but still keep the rest when the premise of the whole argument is the entire bill was not passed constitutionally? What's your best authority for that sort of pick and choose approach to injunctive attacks? Well, Your Honor, it seems like a case that's not coming to mind, but it seems like a general principle that when you seek specific relief, that's what the court can determine. And if you ask for broad relief, they can give you narrow. I mean, I don't... At the risk of sounding cliche, Maury versus Madison, you can examine... You can declare what the law is. And so that then gives the court the authority to fashion appropriate relief. A single judge to go through the trillions and say, not this, but keep all the rest. I think if someone was challenging the entire bill, as Judge Hendricks noted, that would be a different weighing of the factors. Because he said here, because we requested very specifically requested narrow relief, that this was appropriate. You would have to be arguing it's all unconstitutional, right? I'm sorry, Your Honor? Your position would have to be the whole thing was not constitutionally passed. None of the money. Correct, Your Honor. That would be an implication of this holding. But again, if in a future case, someone wants to challenge the funding, for example, the question of clawing back already spent funds, workability. Those are all different questions when determining whether injunctive relief is appropriate. If your physical presence requirement is inherent in the text, how was Texas prejudiced here? In other words, how did they not participate? Weren't they on C-SPAN or teleconference? Where's the prejudice argument in your brief, in other words? The prejudice argument is that the physical presence requirement has a substantive meaning in that it... I know that, but just given what we all agree happened here, they're changing their votes and they're participating by teleconference. How was anyone prejudiced, even if there is error? Texas is prejudiced because an unconstitutional bill has abrogated our sovereign immunity. And so we have a right to be free from unconstitutional legislation, especially where our sovereign immunity is implicated. I guess the last thing I'd like to say here is turning back to the Enroll Bill Doctrine. The federal government's points raise the arguments by Justice Scalia and Justice Stevens, both of which the majority flatly rejected. And so for these reasons, we asked the court to affirm the permanent injunction below. Counsel, before you sit down, I noticed that the attorney general, it gave an opinion to the Texas legislature during the pandemic about a physical presence requirement. Are you familiar with that? I am not, Your Honor. Do you know whether the Texas legislature adhered throughout the pandemic to a physical presence requirement or not? Do you know that? I do not, Your Honor, but that would be a different question because the... applying the Bruin and Rahimi inquiry, you know, Texas's practices may differ. And here you have 235 years of consistent practice. Thank you. Thank you, Counsel. Rebuttal. Thank you, Your Honors. I'll just start with a quick point on the Enroll Bill rule and then get to some of the merits questions. First, on the Enroll Bill, I understand Texas, on one hand, to be saying that Marshall Field is limited to its facts and that that's what Munoz-Flores means. But at the same time, Texas appears to recognize that the Enroll Bill rule would apply to foreclose at least some quorum clause claims. Like the District Court, Texas appears to rest this distinction on a purported difference between fact-intensive claims and legal claims. And that doesn't appear in Marshall Field. It's also not clear that it works even in this case. The District Court and Texas rely on the assertion that only 201 members were physically present in the House that day, and that forms a basis for their claims. On the merits, Your Honor, Texas agrees, as the District Court did, that the text of the quorum clause says nothing about physical presence. It refers to the number of members that must participate in order for the House's power to conduct business to arise. The debate at the Constitutional Convention was over this number. Whether it should be less than a majority, above a majority, the framers settled on a majority. Judge Higginson, as you noted, the framers also adopted the ability to compel the attendance of absent members to further give the House a tool. If you lose on the merits, if we reach it and you lose, speak quickly to the consequences. He's saying it wouldn't disturb unanimous consent voting or voice voting. I do not understand, to be frank, the District Court or Texas's distinction with respect to unanimous consent. If the Constitution requires the physical presence of a majority of members for the House's power to conduct business to arise, proceedings such as unanimous consent presumably are not constitutionally permissible. But it presumes a quorum. I mean, in other words, the quorum is presumed, it's presumed that the quorum clause is met until one member comes in and says, I object. And then a quorum has to be there. Under the House's rules, a quorum is presumed. Well, House's rules, 200 and something years of practice, what the Senate does, they presume a quorum. I don't know that there's any issue in this case about whether Congress could presume a quorum that was otherwise initially there and may or may not be there on any given day in the afternoon or whatever. My understanding is that the presumption of a quorum continues again. That's a House— But there was a quorum to begin. Here there was not a quorum. And I guess, again, one member can come in and say, I object. There's not a quorum here. I want a quorum call. And they have a right to do that, right? I guess just on the facts, I mean, there was no objection in this case. So I'm not even sure that the presumption of a quorum, you know, necessarily gets Texas very far even in this case where there's not an objection. But at the end of the day, it's the House adopting rules to arrange its procedures. And if there's a constitutional requirement of a physical presence of a majority for the House to be able to conduct business, it's not clear why the House could simply presume that away. And because no one objects, the constitutional requirement is not there. The fact that Article 3 has been doing exactly this, does that relate to how we look at Article 1? I mean, I think the fact that with respect to Article 3, with respect to the executive branch, you know, we say across those contexts in which a quorum is, again, understood consistent with its plain meaning today and at the founding to refer to participation in a matter and not necessarily physical presence. The Supreme Court itself adopted remote voting procedures during the pandemic. Do you know what Texas adopted? I do not know, Your Honor. We cite in our brief a Supreme Court of New Hampshire decision in which the New Hampshire legislature had wanted to adopt remote voting procedures. The Supreme Court issued an advisory opinion, which it could do under state law and said that that was OK. The constitutional text of New Hampshire is very similar, if not the same as the federal one. And the Supreme Court of New Hampshire said, you know, absent doesn't refer to physical absent, that the legislature has this authority. Back, I guess, back, back on sort of a remedy question. Fair to say you're here defending Congress's power first, Texas can't exempt itself from a portion of the appropriation bill. Yes or no? I mean, I think we're here saying the district court was wrong with respect to each aspect of its decision. I mean, the district court applied equitable principles and didn't give Texas, you know, didn't invalidate a law above what Texas had established its standing or above what equitable principles showed. But Texas. Appropriate the money, it's appropriated money. Fair goose for the gander and others, the executive branch, unless it vetoes the appropriation bill or seeks a rescission. The executive branch also cannot fail. On appropriated money. I mean, I think they're, you know, to the extent that this is an appropriations bill that, you know, the presiding officers of Congress, you know, both signed as a bill that had passed Congress. It was signed by the president and is deposited in the public archives. You know, the principles underlying the general bill, general, I think, principles of judicial restraint. You know, this is a bill that the public should be permitted to rely upon as a bill. It is. I'm asking you just the executive branch. They don't have authority to not to impound money that's been appropriated. I mean, there's no question of that in this case, your honor. I mean, the district court held the district court's holding would mean that, you know, this entire statute is called into question. We discussed those consequences earlier. And I think Texas acknowledges the consequences of its decision. There are no further questions. We ask that the district court be reversed. Thank you. Thank you, counsel. The court will take this matter under advisement.